[No. 18747. Department Two. January 20, 1925.]

## C. R. CROSS, *Appellant*, v. ARTHUR VOSS *et al.,* *Respondents.*[1]

BILLS AND NOTES (64-1)—BONA FIDE PURCHASER—GOOD FAITH—EXECUTORY CONTRACT—BREACH OF WARRANTY—NOTICE. Knowledge by the purchaser of a note before maturity, that the same was given as the purchase price for property under a warranty, does not affect his status as a holder in due course, where he had no knowledge that there had been any breach of the warranty.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered February 11, 1924, upon the advisory verdict of a jury rendered in favor of the defendants, in an action to foreclose a mortgage. Reversed.

*John M. Gleeson* and *J. D. McCallum,* for appellant.

*Freece & Pettijohn,* for respondents.

MACKINTOSH, J.—This was a suit to foreclose a mortgage upon real estate, given to secure payment of two promissory notes. The respondents executed the two notes on March 1, 1920; one payable one year and four months after date, and the other payable two years and four months after date. The notes were executed to Lloyd & McCallum in payment of a jackass. On June 5, the mortgage to secure the notes was

[1]Reported in 231 Pac. 929.

executed and delivered, and on June 12 Lloyd & McCallum assigned the notes for value to the appellant, and on June 29 the assignment of the mortgage was properly recorded. The respondents paid interest on the notes in November, 1921. At the time of the sale of the animal to the respondents, Lloyd & McCallum warranted to the respondents his usefulness. In the fall of 1920, the respondents claim to have discovered that he was not living up to the warranty, but they tried him for another year. After making the discovery, it will be noted that the respondents continued to pay interest on the notes. The respondents defend against the action on the ground that the appellant is not a holder of the notes in good faith.

It is, of course, apparent that the appellant is a holder for value before maturity. Section 3443, Rem. Comp. Stat. [P. C. § 4123], provides that, in order for one to be the holder of a note in due course, he must take, in addition to the other requirements, in "good faith." At the trial there was some squinting at fraud in the transaction, but we find no evidence justifying any contention that Lloyd & McCallum were guilty of any fraud in the sale to the respondents. The case simply resolves itself into whether the appellant acquired the notes in good faith under the following circumstances: It appears that appellant is a school teacher in Spokane, and Lloyd & McCallum, his neighbors, are engaged in breeding and selling jackasses; that the appellant had a conversation with Lloyd & McCallum and the respondent husband before the sale of this animal, and that the appellant knew that Lloyd & McCallum were going to warrant its breeding ability, and respondents testified that on this, his first meeting with the appellant, the appellant said "he believed I would find Lloyd & McCallum allright."

There is not a scintilla of evidence that the appellant and Lloyd & McCallum were participating in any fraud, nor was the appellant's statement in any way indicative of any over-reaching of the respondent, and the case simply presents the question of whether a person, knowing a note has been given in a commercial transaction in which the payee has sold property which is warranted, is unable to collect upon that note from the maker if it should thereafter develop that the warranty had been breached. The appellant had no acquaintance with this particular jackass and had no intimation that he might shatter the warranty of his old, or the hopes of his new, owners. To sanction the doctrine that, under such circumstances, a person paying value before maturity for a negotiable instrument is not a holder in due course by reason of his failure to exercise good faith, would be most astonishing. Even though there might have been fraud in the transaction at the time the notes were issued, there is no evidence that the appellant knew of it, and where the fraud was not discovered until afterwards, the person, in the meantime, who has bought and paid for the negotiable instrument is not chargeable with knowledge of the fraud. *Scandinavian-American Bank v. Johnston,* 63 Wash. 187, 115 Pac. 102; *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907; *Larsen v. Betcher,* 114 Wash. 247, 195 Pac. 27; *Westland v. Post Land Co.,* 115 Wash. 329, 197 Pac. 44; *Banner Meat Co. v. Rieger,* 125 Wash. 142, 215 Pac. 334; *Lovell v. Dotson,* 128 Wash. 669, 223 Pac. 1061. Certainly, if this is true in a case of fraud, it is doubly true where the purchaser of the negotiable instrument before maturity for a valuable consideration takes that instrument without knowledge that there has been a breach of the warranty of an executory contract, *Moyses v. Bell,* 62 Wash. 534, 114 Pac.

193; *German-American Bank v. Wright,* 85 Wash. 460, 148 Pac. 769, Ann. Cas. 1917D 381; *Citizens Bank & Trust Co. v. Limpright,* 93 Wash. 361, 160 Pac. 1046. In *Moyses v. Bell, supra,* the court said:

"The courts have repeatedly held that knowledge by an indorsee of a note that it had been given in consideration of some executory contract or agreement of the payee, which the payee afterwards fails to perform, will not deprive the endorsee of his character of a *bona fide* holder in due course, unless prior to its assignment to him he had notice of the breach of the executory contract, and that such breach had theretofore occurred."

We find nothing at all in this record to justify the holding that the appellant was not a holder in due course. The decree is therefore reversed and one entered foreclosing the mortgage as prayed for by the appellant.

MAIN, FULLERTON, MITCHELL, and HOLCOMB, JJ., concur.